**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

LimoStars, Inc., )  No. CV-10-2179-PHX-LOA
                )
        Plaintiff, )  **REPORT AND**
                )  **RECOMMENDATION,**
vs.             )  **FINDINGS OF FACT, AND**
                )  **CONCLUSIONS OF LAW**
                )
New Jersey Car and Limo, Inc., a New )
Jersey corporation, )
                )
        Defendant. )
                )
_____ )

A default damages hearing was held in open court on June 16, 2011, after

entry of default against Defendant New Jersey Car and Limo, Inc. ("New Jersey Limo"),

a New Jersey corporation, on Plaintiff LimoStars, Inc.'s ("Plaintiff") October 12, 2010

Complaint. (Docs. 1, 10[1])  Plaintiff's President and Chief Executive Officer, Charles

Wurster, III ("Wurster") testified at the default damages hearing.  Pursuant to General

Order 11-3,[2] the undersigned Magistrate Judge recommends that default judgment be

---

[1] On October 14, 2010, the Court ordered Plaintiff to re-file its Complaint because the original was not properly filed electronically in text-searchable .pdf format and did not comply with this District Court's Local Rules. See, LRCiv 5.5(b) and definition of ".pdf," ECF Manual, at I(A), p. 2. (Doc. 9)

[2] General Order 11-3, entitled Dismissal of a Civil Case Assigned to a United States Magistrate Judge Absent Voluntary Consent by the Parties Under 28 U.S.C. § 636(c)(1), directs that when a Phoenix Division magistrate judge to whom a civil action has been assigned lacks jurisdiction to proceed, the order or, in this case, the report and

entered in favor of Plaintiff against Defendant New Jersey Limo in the amount of $82,380.77 and include the requested injunctive relief recommended herein for the reasons set forth in this Report and Recommendation.

**I. Background**

      **A. The Allegations**

This trademark infringement action seeks both injunctive relief and monetary damages as a result of Defendant New Jersey Limo's intentional infringement of Plaintiff's federally registered "LIMOSTARS" trademark by New Jersey Limo's use of the www.nylimostars.com website. New Jersey Limo is a New Jersey corporation, controlled by Malak Faltawws ("Faltawws"), its Chief Executive Officer ("CEO").

On April 12, 2011, the Court received a faxed letter, doc. 29, from Faltawws, a non-lawyer, only two days before the April 14, 2011 default damages hearing which had been scheduled since February 10, 2011. The next day the Court received a second letter, doc. 31. Among other claims, Faltawws' first letter "question[ed] the plaintiff's claim that jurisdiction is proper in the Courts of Arizona . . . [because] this case does not involve any dispute with GoDaddy.com, or my registration of the domain name."[3] (Doc. 29 at 1)  The Court construed the April 13, 2011 letter, doc. 31, a motion to continue the default damages hearing which it summarily granted with very little notice to Plaintiff's Illinois counsel, Mark L. Brown. (Doc. 33)  Faltawws was informed in writing that only licensed attorneys may represent a corporation in Arizona and New Jersey Limo "must retain an attorney, licensed to practice law in Arizona and admitted to practice in this District Court or authorized to practice law in this District Court upon *pro hoc vice* application, and file an appearance herein on or before **April 29, 2011**." (*Id.* at 5)

---

recommendation shall be directed to Senior United States District Judge Stephen M. McNamee for ruling. General Order 11-3, www.azd.uscourts.gov at Rules/General Orders.

[3] The Court rejects this argument and explains why later herein in the section entitled Conclusions of Law.  Faltawws' other irrelevant, collateral claims are dispelled in Plaintiff's Post-Hearing Memorandum. (Doc. 43)

(emphasis in original). When no attorney appeared in this case on behalf of New Jersey Limo by May 18, 2011, the Court re-scheduled the default damages hearing for June 16, 2011. (Doc. 37)

Count I of Plaintiff's Complaint alleges a trademark infringement claim in violation of 15 U.S.C. § 1114(1)(a), which provides for the liability of anyone who, without the consent of the registrant, uses:

> in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

(Doc. 10 at 7-8) Count II alleges false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), which similarly provides for the liability of anyone who:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

(*Id.* at 8-9)

The Complaint requests New Jersey Limo (1) "disgorge all profits derived from the sale of products or services originating from its infringing use of the LIMO-STARS trademark"; (2) "pay compensatory damages, in an amount to be determined at trial, attributable to the infringement of the LIMOSTARS trademark"; (3) "pay enhanced damages to Plaintiff of at least treble the amount of compensatory damages, due to Defendant's intentional, willful, deliberate, malicious, egregious and bad faith actions"; (4) pay punitive damages to Plaintiff for "Defendant's oppressive, fraudulent and malicious acts of infringement and unfair competition"; and (5) pay Plaintiff's costs in bringing this action, including its reasonable attorneys' fees and expenses. (*Id.* at 9-10)

The Complaint also seeks a permanent injunction, prohibiting New Jersey Limo, "its officers, agents, servants, employees, affiliates, parent or subsidiary

corporations, attorneys, and all those in privity or acting in concert with it" from further infringement of the LIMOSTARS trademark and enjoining Defendant from refusing to transfer to Plaintiff the use of www.nylimostars.com. (*Id*. at 9)  The Lanham Act provides that district courts "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office. . . ." 15 U.S.C. § 1116(a). Injunctive relief "is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). "When the infringing use is for a similar service," as Plaintiff alleges here, "a broad injunction is especially appropriate." *GoTo. com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000).

**B. Service of Process**

New Jersey Limo's registered agent is Faltawws whose address is 301 State Route 17, Suite 800, Rutherford, New Jersey 07070. (Doc. 19, Exhibit ("Exh") 1 at 1-2; Exh 4 at 2, ¶ 2) The internet website at issue identifies this address as the business address for New Jersey Limo. (Doc. 10-1 at 1)  Faltawws is New Jersey Limo's CEO. (Docs. 19, Exhs 1, 3; 25, Exh 2, ¶¶ 3, 9)

A process server attempted to serve the Summons and Complaint on New Jersey Limo on November 15, 2010, through its registered agent, Faltawws, at the above address but was unable to do so because "[t]he site is a virtual office and the receptionist . . . stated the company moved over 6 months ago. No forwarding address was left with them." (Doc. 16)

Federal Rule of Civil Procedure ("Rule") 4(h)(1) governs service of process on domestic and foreign corporations, when the corporation is served in the United States. Rule 4(h)(1)(A) provides that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Rule 4(h)(1)(B) authorizes service of process on a corporation "by delivering a copy of the summons and of the complaint to an officer, a

- 4 -

managing or general agent, or any other agent authorized by appointment or by law to receive service of process and - if the agent is one authorized by statute and the statute so requires - by also mailing a copy of each to the defendant. . . ." Fed.R.Civ.P. 4(h)(1). Rule 4(e)(1), in turn, permits service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4(e) (1), Fed.R.Civ.P.

After attempting to serve process on New Jersey Limo's CEO, Faltawws, its registered agent who left no forwarding address, Plaintiff served the New Jersey Department of Treasury as authorized under New Jersey law. *B & B Realty Associates, LLC v. J & S Management Enterprises, Inc.*, 2008 WL 4681981, * 5 (N.J. Super.A.D., Oct. 22, 2008) ("We are satisfied that there was good service on" the corporate defendant when service on statutory agent could not be effectuated, counsel served the New Jersey Department of Treasury on behalf of corporation pursuant to N.J.S.A. 2A:15-30.1[4]).

On December 8, 2010, Plaintiff had copies of the Summons and Complaint served on New Jersey Limo by delivering them to the New Jersey Department of Treasury. (Docs. 17; 19, Exh 4, ¶ 4)  The New Jersey Department of Treasury acknowledged receipt of this service via letter, dated December 21, 2010. (Doc. 19, Exhs 2,4)  In the letter, dated January 20, 2011, the Department of Treasury confirmed that it

---

[4] New Jersey Statutes Annotated ("N.J.S.A.") 2A:15-30.1 provides in relevant part:

b. If a business entity, foreign or domestic, is required to register with a State official or agency to transact business in this State and is required to register an address or an agent in this State for the service of process, process in any action in any court of this State directed to the business may be served on the State official or agency, *if*:

(1) The business entity has failed to register or re-register as required by law; or

(2) *The business entity has failed to maintain a registered address or a registered agent in this State for service of process, as required by law*.

N.J.S.A. 2A:15-30.1 (emphasis added). See also, N.J.S.A. 14A:4-5.

mailed a copy of the Complaint to New Jersey Limo's last known registered agent at the address referenced above, and that the mailing was returned undelivered. (*Id.*, Exh 3)

Plaintiff's counsel requested that the New Jersey Department of Treasury provide the foregoing information via affidavit and, in response, Plaintiff's counsel received a substantively identical letter, signed by Chief of Operation Robert Benco, Jr. and notarized by Notary Shaunelle Clark. (Doc. 25, Exh 3)

New Jersey Limo also received actual notice of this action as early as February 18, 2011, doc. 25, ¶¶ 3-4, and no later than April 11, 2011 when Faltawws sent his letter to the Court. (Doc. 29) Despite both statutory service of process and actual notice of this lawsuit, no answer or other responsive pleading was filed on behalf of New Jersey Limo and the time to do so has expired. The Clerk of Court entered New Jersey Limo's default on February 8, 2011. (Doc. 20) On February 25, 2011, Plaintiff filed an application for entry of default judgment against New Jersey Limo and requested an evidentiary hearing pursuant to Rule 55(b)(2). (Doc. 23) Because the Complaint requested non-liquidated damages and injunctive relief, the Court held a default damages evidentiary hearing on June 16, 2011. (Doc. 38) *Holtsinger v. Briddle*, 2007 WL 1080112, * 1 (E.D.Cal. 2007) ("[w]hen a plaintiff's damages are unliquidated (*i.e.* capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits) or punitive, they require 'proving up' through an evidentiary hearing or some other means." ) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323-24 (7th Cir. 1983)). Plaintiff's pre-hearing and post-hearing memo-randa, proposed and amended proposed findings of fact and conclusions of law, and application for attorney's fees, costs and supplemental declaration were filed on April 1, 2011, and July 29, 2011, respectively.[5] (Docs. 25-27, 43-45)

---

[5] A district court has wide discretion to grant a party leave to supplement the record upon request in order that the court may obtain accurate information when making its ruling. *United States v. Maris*, 2011 WL 468554, * 5 n. 5 (D.Nev., Feb. 4, 2011) (granting leave to file supplemental materials after motions were filed and a hearing held on a motion for

**II. Jurisdiction**

    **A. Magistrate judge jurisdiction**

        On October 21, 2010, Plaintiff consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 13)  Arguably, when a plaintiff consents in writing to a United States magistrate judge, that magistrate judge has juris-diction to conduct a default damages hearing and enter final judgment against a properly-served defendant even though that defendant has neither appeared in the action nor consented to proceed before a magistrate judge. Technically speaking, the defaulted defendant is not a party because he failed to appear in the action. *United States v. Real Property*, 135 F.3d 1312 (9th Cir. 1998); *United States v. 8136 S. Dobson Street*, 125 F.3d 1076 (7th Cir. 1997); *EEOC v. West Louisiana Health Svcs., Inc.*, 959 F.2d 1277, 1279-80 (5th Cir. 1992); *Giove v. Stanko*, 882 F.2d 1316, 1318 (8th Cir. 1989). Because the Ninth Circuit has not expressly addressed this issue, and, at least one circuit court has found to the contrary,[6] in an abundance of caution, the undersigned will proceed by Report and Recommendation.

    **B. Subject matter jurisdiction**

        The District Court of Arizona has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States. As previously stated, Plaintiff's Complaint asserts a federal-question claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1111, *et seq.* (Doc. 10)

---

summary judgment); *Mitchel v. Holder*, 2010 WL 816761, * 1 n.1 (N.D.Cal., Mar. 9, 2010) (granting leave to file supplemental memorandum concerning newly  obtained evidence); *Lumsden v. United States*, 2010 WL 2232946, * 1 (E.D.N.C., June 3, 2010) (granting a party leave to submit additional newly discovered evidence).

    [6] *Henry v. Tri-Services, Inc.*, 33 F.3d 931, 932 (8th Cir. 1994) ("We hold that the magistrate judge lacked authority to enter final judgment because [the defaulted party] did not consent to have the matter tried to the magistrate judge.").

1    Venue is also proper because New Jersey Limo voluntarily consented to venue in Arizona.[7]

2    *Productive People, LLC v. Ives Design*, 2009 WL 1749751, * 2 (D.Ariz., Jun 18, 2009) ("A

3    contract's forum selection clause alone is sufficient to confer personal jurisdiction and

4    venue[.]") (citing *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406-07 (9th Cir. 1994));

5    *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (forum selection

6    clause in contract, providing that venue of action brought under contract would be deemed

7    to be in Virginia, was enforceable).

8    ### C. Personal Jurisdiction over Defendant

9    By registering the www.nylimostars.com website through Go Daddy, Inc.

10   ("Go Daddy"), New Jersey Limo consented to personal jurisdiction in this District Court for

11   resolution of this dispute. New Jersey Limo, through its CEO, contractually agreed to Go

12   Daddy's Universal Terms of Service for Go Daddy Software and Services as follows: "For

13   the adjudication of disputes concerning the use of any domain name registered with Go

14   Daddy, You agree to submit to jurisdiction and venue in the U.S. District Court for the

15   District of Arizona located in Phoenix, Arizona", doc. 25, Exh 6 at 4, ¶ 14;  Exh 2 at 4, ¶ 8,

16   and "You agree that any action relating to or arising out of this Agreement shall be brought

17   in the state or federal courts of Maricopa County, Arizona, and you hereby consent to (and

18   waive all defenses of lack of personal jurisdiction and forum non conveniens with respect

19   to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona."

20   (Doc. 25, Exh 6 at 35, ¶ 20; Exh 2 at 4, ¶ 8)  *Productive People, LLC*, 2009 WL 1749751

21   at * 1 ("A contract's forum selection clause alone is sufficient to confer personal jurisdiction

22   and venue[.]") (citing *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406-07 (9th Cir.

23   1994)). See also *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) ("[I]t

24   _____

25   [7] New Jersey Limo, through its CEO, contractually agreed to venue in Arizona by
     consenting to Go Daddy's Universal Terms of Service for Go Daddy Software and Services:
26   "For the adjudication of disputes concerning the use of any domain name registered with Go
     Daddy, You agree to submit to . . . venue in the U.S. District Court for the District of
27   Arizona located in Phoenix, Arizona . . . ." (Doc. 25, Exh 6 at 4, ¶ 14; see also, Exh 2 at 4,
28   ¶ 8; Exh 6 at 35, ¶ 20; Exh 2 at 4, ¶ 8)

is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 282 n. 11 (4th Cir. 2009) ("We note in passing that a valid forum selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction."); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) ("[O]bviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") (internal citations omitted); *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 n. 6 (1st Cir. 1995) ("In the commercial context a forum selection clause, even one for arbitration, confers personal jurisdiction on the courts of the chosen forum.") (citation omitted).

## III. Default Judgments

Following the entry of default, Rule 55(b)(2) permits a district court to enter final judgment in a case. Entry of default judgment, however, is not a matter of right. "Its entry is entirely within the court's discretion and may be refused where the court determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons." *Eason v. Indymac Bank, FSB*, 2010 WL 1962309, * 1 (D.Ariz., May 14, 2010) (citing *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) and *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). "[A]ll well-pleaded facts in the complaint are taken as true, except those relating to damages." *Black & Decker (U.S.), Inc. v. All Spares, Inc.*, 2010 WL 3034887, * 2 (D.Ariz., Aug. 3, 2010) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (trademark owner was entitled to attorneys' fees under Lanham Act on basis that district court entered default with respect to complaint that pleaded willful trademark infringement); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

In determining damages, a district court may rely on the declarations submitted by the plaintiff or conduct a full evidentiary hearing, Rule 55(b)(2), and "can award only up to the amount prayed for by a plaintiff in its complaint." *Black & Decker*, 2010 WL 3034887, * 3 (citing *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at * 13 (N.D.Cal. 2007)). "[P]laintiff's burden in 'proving up' damages on a motion for default judgment is

relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Id.* (citing *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D.Cal. 2003) (citations omitted). "Entry of default judgment is not mandatory upon Plaintiff's request, and the court has discretion to require some proof of the facts that must be established in order to determine liability." *Martino v. Chapman*, 2008 WL 110948, * 1 (D.Ariz., Jan. 8, 2008) (quoting *Apple Computer Inc. v. Micro Team*, 2000 WL 1897354, * 3 n. 5 (N.D.Cal. 2000) (citing 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3rd ed. 1998)). Fundamental fairness, required by due process of law, limits the scope of relief, which is, undoubtedly, why Rule 54(c), Fed.R.Civ.P., proscribes that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Freemyer v. Kyrene Village II, LLC*, 2011 WL 42681, * 3 (D.Ariz., Jan. 6, 2011) (citing *Philip Morris USA*, 219 F.R.D. at 498 and quoting Rule 54(c), Fed.R.Civ.P.).

Courts in the Ninth Circuit have held that "doubts about the actual assessment of damages [awarded at a default hearing] will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably ascertainable value." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D.Cal. 1997) (quoting *Nintendo v. Ketchum*, 830 F.Supp. 1443, 1445-1446, (M.D.Fla. 1993) (cited with approval on other grounds in *Nintendo v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir. 1994)).

The Ninth Circuit has enumerated seven factors for a district court to consider in determining whether to grant a default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea*

*Corp.*, 2007 WL 1545173 (N.D. Cal. 2007). After considering and balancing all these factors, the undersigned Magistrate Judge finds that they weigh strongly in favor of entering the default judgment recommended herein.

Because the Complaint seeks, *inter alia*, non-liquidated, non-specific damages, and not "a sum certain or a sum that [could] be made certain by computation" within the meaning of Rule 55(b), the Court conducted an on-the-record Rule 55(b)(2) default damages hearing on June 16, 2011.

**V. Findings of Fact**[8]

1. Plaintiff LimoStars is an Arizona corporation with its principal place of business in Buckeye, Arizona. It is an internet-based business providing its customers with convenient access to a network of limousine, shuttle, bus and taxi service providers throughout the United States. Its principal method of attracting and interacting with its customers is through its internet website, www.limostars.com. (Doc. 10 at ¶ 2)  According to Wurster, "[n]obody is advertising in the Yellow Pages because the primary means is the internet, you know, using the nature of search engines, plus you know, when you're looking for ground transportation service or any type of product or service on a global scale, you may not have access to a Yellow Page book. So the primary means in today's world is the internet to find out of state services or even out of country services." (Transcript ("Tr.") of June 16, 2011 hearing at p. 28, lines 2-8)

2. Plaintiff owns the federally registered trademark at issue in this action. The "LIMOSTARS" trademark was registered to Plaintiff by the U.S. Patent and Trademark office on November 29, 2005, granting the application filed by Plaintiff on December 6, 2004. Plaintiff has been using the name LIMOSTARS continuously since 2003 in connection with chauffeured transportation and tour reservation booking services. (Doc. 10, ¶ 3)

3. Defendant New Jersey Limo is a New Jersey corporation with its principal

---

[8] The findings of fact may also be a mixture of facts and law.

place of business in Rutherford, New Jersey. New Jersey Limo is also in the business of providing customers with access to limousines and other chauffeured ground transportation services, and New Jersey Limo competes directly with Plaintiff for business in New York and New Jersey, perhaps among other markets. (*Id.*, ¶ 4)

4. New Jersey Limo has operated an infringing website and business through which it has misdirected Plaintiff's customers within and outside this judicial District, has injured Plaintiff's reputation and goodwill, and caused Plaintiff other harm within this District. (*Id.*, ¶ 6)

5. A substantial number of Plaintiff's customers have been misdirected to New Jersey Limo. (*Id.*, ¶ 7)

6. Since July of 2003, Plaintiff has continuously used the name LIMOSTARS in connection with chauffeured transportation and tour reservation booking services. During that time, Plaintiff earned a reputation for providing high quality and affordable service to its many customers. As a result, the LIMOSTARS' name has garnered a significant degree of recognition and goodwill among the public. (*Id.*, ¶ 8)

7. Plaintiff is the owner of the LIMOSTARS federal trademark registration (Reg. No. 3,020,888) issued by the United States Patent and Trademark Office on November 25, 2005, for "travel agency services, namely, making reservations and bookings for transportation." (*Id.*, ¶ 9)

8. Plaintiff has gone to great lengths to promote both the LIMOSTARS trade name and the www.limostars.com website. Plaintiff has advertised significantly, including, without limitation, securing banners and text links on more than 800 partner and affiliate websites. Plaintiff has taken extraordinary measures to maximize the ranking of www.limostars.com in online searches for limousine and chauffer services through strategic search engine optimization, at an estimated cost of over $400,000. Plaintiff has devoted millions of dollars in man hours calling corporate customers to gain new corporate accounts and create brand awareness. The totality of Plaintiff's efforts to develop and market www.limostars.com is estimated at more than $3 million. (*Id.* at ¶ 10; Tr. at 20)

9. As a result of Plaintiff's substantial investment and other significant efforts, www.limostars.com enjoyed more than 43,000 annual visitors and more than 160,000 page views annually, resulting in more than 85,000 passengers utilizing Plaintiff's services. (*Id*., ¶ 11)

10. In July 2009,[9] Plaintiff discovered the existence of a competing website, utilizing the domain name www.nylimostars.com. New Jersey Limo obtained that domain name in February of 2009. (Tr. at 21, l. 4; 23, l. 7; Hearing ("Hrg") Exh 8 at 29-30)

11. The original registrant of www.nylimostars.com was Haroon Chaudry ("Chaudry"), a former LimoStars' vendor who strangely called Wurster shortly before the first scheduled default hearing. (Tr. at 47-49; Hrg Exh 4) Chaudry transferred www.nylimostars.com to Faltawws on April 8, 2009, little more than two months after Chaudry registered it on February 3, 2009. (Hrg Exh 4 at 5; Exh 12 at 2) Faltawws transferred the website registration on November 1, 2010 to Makary Shehata in Cairo, Egypt, a transfer that occurred less than a month after this action was filed on October 12, 2010. (Hrg Exh 4 at 10) The Faltawws-to-Shehata transfer took place at 6:26 p.m. (*Id*.) By 6:49 p.m. on the same day, it had been transferred again to Domains by Proxy, Inc., a service used to conceal the true identity of the actual registrant. (*Id*. at 12) Makary Nagy was given credit as the web designer on newjerseycarandlimo.com. (Hrg Exh 17 at 3) Al Nagy Trade is the current registrant of the offending nylimostars.com website. (Hrg Ex. 14 at 3, 5) "Al Nady Trade" is the company name listed on the current version of the nylimostars.com website which is mostly in Arabic. (Hrg Exh 18)

12. There is a certain continuity running throughout these various registration changes from Faltawws to Makary Shehata to Makary Nagy to Al Nagy Trade to Al Nady

---

[9] According to the testimony at the hearing, the Complaint's allegation that Plaintiff first became aware of the infringing website in July, 2010 in incorrect. (Doc. 10, ¶ 12)

Trade.[10]

13. The www.nylimostars.com website advertised New Jersey Limo's chauffeured transportation services in New York and New Jersey, competing directly with the services associated with LIMOSTARS and offered on www.limostars.com. (Doc. 10 at ¶ 13) "So the similarity for NY LimoStars or a permutation of NYC LimoStars, or anything that's New York LimoStars is absolutely in direct competition with us." (Tr. at 26, ll 20-23)

14. New Jersey Limo chose to obtain the www.nylimostars.com domain name because it incorporated the LIMOSTARS trademark that had already been popularized through Plaintiff's substantial efforts, which is confusingly similar to www.limostars.com, allowing New Jersey Limo to benefit from Plaintiff's goodwill and name recognition generated by Plaintiff's substantial investment and other significant efforts. Despite New Jersey Limo's unauthorized use of Plaintiff's federally registered trademark in New Jersey Limo's www.nylimostars.com domain name, there is no connection between New Jersey Limo and Plaintiff's LIMOSTARS mark. It is not part of New Jersey Limo's corporate or business name, and it is not descriptive of New Jersey Limo's products or services. (Doc. 10 at ¶ 14)

15. New Jersey Limo's domain name www.nylimostars.com is substantially and confusingly similar to Plaintiff's LIMOSTARS trademark and domain name www.limostars.com. (*Id*. at ¶ 15)  New Jersey Limo has utilized www.nylimostars.com in substantially the same commercial activity as that of Plaintiff's (*i.e.*, the online reservation and rental of limousines and other chauffeured ground transportation services). (*Id*.)

16. The primary marketing medium used by Plaintiff and New Jersey Limo to

---

[10] Whether this is a mere coincidence or these names are pseudonyms for Faltawws or someone working with him, Plaintiff indicates the timing of these registrations leads to a reasonable inference of, at a minimum, some coordination with Faltawws. Although irrelevant for purposes of liability or damages, a reasonable inference of Faltawws' ongoing coordination, and the other evidence suggest a continuing threat of irreparable harm to Plaintiff and the need for injunctive relief against New Jersey Limo and those in active concert with it.

promote and sell their competing services is identical—the internet. (Doc. 10 at ¶ 16)

17. Upon learning of the existence of www.nylimostars.com, Plaintiff's president and CEO, Wurster, telephoned New Jersey Limo. (Tr. at 13, 23-25) In a friendly manner, Wurster asked to speak to the owner to inform him that New Jersey Limo cannot use Plaintiff's trade name and "International Class 39 trademark . . . that . . . is in direct competition [with Plaintiff] and that it's so high up on Google that it's causing confusion with our customers and making us lose business with our affiliate programs, customers and the like." (Tr. at 25) Wurster was hopeful that New Jersey Limo would immediately remove its offending website. (Tr. at 23-25) The purpose of the call was to give New Jersey Limo the opportunity to voluntarily remove its website. (Tr. at 25) New Jersey Limo's representative, believed to be its CEO, Faltawws,[11] responded with profanity ("[G]o f___ yourself") and refused to remove the website. (*Id.*) After Wurster's call and conversation with Faltawws, the offending website was not removed until approximately August 2010. (*Id.* at ¶ 17; doc. 25, Exh 1, ¶ 14) At that point, Wurster recognized that Plaintiff "was kind of forced into a corner to hire counsel." (Tr. at 25, ll 20-21)

18. Exhibit 1 to the Complaint, doc. 10, Exh 1, is a true and accurate copy of the homepage of www.nylimostars.com substantially as it appeared immediately prior to its removal. (The domain name of the website reflected in Exhibit 1 to the Complaint is www.limousinepage.com, but the content is substantively identical to the content on www.nylimostars.com before it was removed.). (Doc. 10 at ¶ 18)

19. As a result of New Jersey Limo's infringement of Plaintiff's LIMOSTARS trademark, sales were diverted from Plaintiff to New Jersey Limo, and Plaintiff's sales in New York and New Jersey decreased substantially. The misdirection of even a single corporate prospective customer can result in the loss of more than a million dollars in revenue to Plaintiff. In addition, misdirected prospective customers caused

---

[11] The male on the phone did not identify himself by name but he said he was the owner of New Jersey Limo and spoke with "a Middle Eastern accent." (Tr. at 24)

Plaintiff to lose revenue in the form of "click through" fees otherwise associated with referring customers to affiliated websites. (Doc. 10, ¶ 19; Tr. at 26)

20. As a result of New Jersey Limo's infringement of Plaintiff's LIMOSTARS trademark, New Jersey Limo was unjustly enriched in the form of sales that otherwise would have gone to Plaintiff. (Doc. 10, ¶ 20)

21. Plaintiff's registered trademark "LIMOSTARS" is inherently distinctive and has acquired secondary meaning. The public associates this mark with Plaintiff's products and services. This is a result of the trademark's inherent distinctiveness and of the distinctiveness acquired through extensive advertising, sales, and use in commerce throughout the United States in connection with Plaintiff's products and services. (*Id*. at ¶ 22)

22. Without Plaintiff's consent, New Jersey Limo used in commerce a reproduction, counterfeit, copy or colorable imitation of the registered trademark LIMOSTARS. New Jersey Limo's actions have caused, or were likely to cause, confusion, mistake, and deception.

23. New Jersey Limo's trademark infringement was intentional, knowingly, and willful. (*Id*. at ¶ 24)

24. New Jersey Limo's use of Plaintiff's federally registered mark was intended to cause, and has caused or was likely to cause, mistake or deception as to the affiliation, connection or association of Plaintiff with New Jersey Limo's services, or as to the origin, sponsorship, or approval of such services. (*Id*. at ¶ 28)

25. New Jersey Limo's conduct diverted customers to New Jersey Limo and away from Plaintiff. (*Id*. at ¶ 29; Tr. at 26)

26. New Jersey Limo knew that its use of LIMOSTARS in its web address was false, misleading, and deceptive. New Jersey Limo acted willfully, deliberately, and in bad faith. (Doc. 10, ¶ 30)

27. Plaintiff renewed the trademark registration on December 6, 2010, and on December 23, 2010, the U.S. Patent and Trademark Office ("USPTO") issued a "Notice

of Acceptance and Acknowledgment of §§ 8 & 15 Declaration", indicating that the "combined declaration of use and incontestability filed [by Plaintiff on December 6, 2010] in connection with the registration identified below [*i.e.*, of LIMOSTARS] meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. §1058 and 1065. The combined declaration is accepted and acknowledged. The registration remains in force." (Docs. 25, Exh 1, ¶ 6; 25-1 (A)

28. New Jersey Limo's offending www.nylimostars.com website was removed sometime between August 17, 2010 and October 4, 2010, most likely in late August or early September of 2010. (Doc. 25, Exh 1, ¶ 15) New Jersey Limo's offending website was operational from about February 1, 2009 to approximately August 31, 2010, a period of 19 months. (Tr. at 29)

29. The harmful impact of New Jersey Limo's offending website will likely continue even after the infringing activity ceased, because customers who were misdirected initially may either become longtime customers of New Jersey Limo rather than longtime customers of Plaintiff, or they may receive such poor service from New Jersey Limo and thereby diminish Plaintiff's goodwill and do not return to either provider. (Doc. 25, Exh 1, ¶ 17)

30. In addition to the rerouting of Plaintiff's customers directly to New Jersey Limo and away from Plaintiff, the mere existence of the www.nylimostars.com website likely adversely impacted Plaintiff's ranking of www.limostars.com in the listings of Google and other popular online search engines. In other words, customers who were not misdirected directly to www.nylimostars.com were less likely to find www.limostars.com in their search results because of the existence of the offending website. (*Id*. at ¶ 18.) This phenomenon can continue long after the removal of New Jersey Limo's offending website. (*Id*.)

31. In addition to lost revenue as a result of www.nylimostars.com, Plaintiff likely suffered a loss of goodwill in connection with each customer who was misdirected to www.nylimostars.com and mistakenly believed that either the customer was dealing with

Plaintiff or that www.nylimostars.com was affiliated with Plaintiff. (*Id*. at ¶ 17)

32. During the time that www.nylimostars.com was online and unbeknownst to Plaintiff, Plaintiff engaged in significant efforts to reverse the decline in its business, strategies that most likely would have been more effective had the offending website not existed. These efforts included, among other things, thousands of hours of modification of the www.limostars.com website to improve search engine optimization ("SEO"); increasing online advertising; creating special "Hot Deal" packages, Airport Rides, Fun City Tours and discounts for corporate and business travel in target markets (with the greatest emphasis on New York City); and reducing prices. (*Id*. at ¶ 19)

33. New Jersey Limo's CEO, Faltawws, called Plaintiff's counsel on February 18, 2011 regarding this case. When they spoke on March 7, 2011, Faltawws explained his belief that Plaintiff's lawsuit lacks merit because he also owns a company called NY Limo Stars LLC. (Doc. 25, Exh 2, ¶¶ 3-4)

34. NY Limo Stars LLC was incorporated in New Jersey on February 22, 2011, *i.e.*, only three (3) days after Faltawws contacted Plaintiff's counsel, and more than four (4) months after this action was filed on October 12, 2010. (*Id*. at ¶ 6; docs. 1, 10)

35. On March 28, 2011, Plaintiff's counsel learned that additional domain names, www.nylimostars.info, www.nylimostars.co, and www.nylimostars.us, were registered on February 19, 2011 through Go Daddy by an entity identifying itself as "Car Network," P.O. Box 1435, Sparta, New Jersey, using the e-mail address 123transportation@gmail.com. (Tr. at 51) These are the same e-mail and postal addresses that New Jersey Limo used in registering www.nylimostars.com. A search of the New Jersey Treasury's online Business Gateway Service revealed no entity in New Jersey by the name "Car Network." However, because of the same e-mail and postal addresses and the close proximity in time to the registration of NY Limo Stars LLC, it is reasonable to believe that Faltawws is directly involved in these new domain name registrations. (Doc. 25, Exh 2 at ¶ 9; Tr. at 51)

36. Hearing Exhibit 14 demonstrates that www.nylimostars.info was

registered to Faltawws at 1:26 p.m. on February 19, 2011. (Tr. at 10) By 1:41 p.m. on the same day, it had been transferred to Al Nagy Trade in Egypt. (Doc. 25, Exh 2, ¶ 9) Hearing Exhibit 19 illustrates the common thread between Faltawws and the other registrants of these websites, through common internet IP addresses, e-mail addresses, postal addresses, and the GoDaddy shopper number. The registration of these additional, similar infringing websites by Faltawws illustrates that New Jersey Limo's and Faltawws' infringement is both willful and ongoing, because they were registered by Faltawws the day after he contacted Plaintiff's counsel to discuss this case, and at approximately the same time he registered NY Limo Stars LLC, effective February 22, 2011. (Tr. at 51-54; Hrg Exhs 14, 16)

37. Faltawws' actions in the foregoing paragraph are consistent with his erroneous belief, expressed during his telephone conversation with Plaintiff's counsel, that his recent incorporation of NY Limo Stars LLC is a defense to trademark infringement, and was done as a defensive response to this lawsuit.

38. The metropolitan area in and surrounding New York City, including New northern Jersey, ("New York metro area") historically has been the largest market for Plaintiff because its size, population, layout and traffic patterns, and national and international significance in the business world have contributed to make limousine transportation in this area more popular than in any other U.S. city. During Plaintiff's existence, the New York metro area has generated roughly one-quarter of Plaintiff's revenues. (Doc. 25, Exh 1, ¶ 9)

39. New Jersey Limo's offending website was online from February 2009 through, at least, the end of August 2010, approximately nineteen (19) months (the "Website Period"). In each of the 19-month periods that preceded the Website Period, Plaintiff's revenue (both in the New York metro area and throughout the U.S.) increased compared to the immediate prior 19-month period. Indeed, the average increase for each 19-month period prior to the Website Period was 250 per cent. (Doc. 25, Exh 1 at ¶ 22; Tr. at 33) Despite this consistent growth for each 19-month period prior to the Website Period, Plaintiff's revenues in the New York metro area plummeted during the Website Period. (Doc. 25, Exh 1 at ¶ 22;

Hrg Exh 8)

40. More precisely, the New York metro area's revenues for Plaintiff during the 19-month period from July of 2007 through January of 2009 were $344,596.71. (Doc. 25, Exh 1, ¶ 22; Hrg Exh 8) During the Website Period, they fell to $145,011.43 - a 58 percent decline in revenue. (Doc. 25, Exh 1, ¶ 23; Hrg Exh 8) Even assuming no expectation of growth during the Website Period, this represents a loss in revenues of $199,585.28. (Doc. 25, Exh 1 at ¶ 23; Tr. at 33; Hrg Exh 8)

41. During the Website Period, Plaintiff's national sales outside the New York metro area dropped by only 45 percent, compared to 58 percent in the New York metro area. (Doc. 25, Exh 1 at ¶ 24; Tr. at 33-34)

42. Had www.nylimostars.com not existed and had Plaintiff's revenues in the New York metro area declined only 45% during the Website period, as they did nationally, the decline in Plaintiff's New York metro area revenue would have been only $155,068.52, compared to the actual decline of $199,585.28. (Doc. 25, Exh 1 at ¶ 26) This is a difference of $44,516.76, which Plaintiff initially believed was reasonably accurate estimate of the dollar value of lost sales attributable to New Jersey Limo's offending website www.nylimostars.com. (Doc. 25, Exh 1 at ¶ 26; Tr. at 34; Hrg Exh 8)

43. Based on the testimony of Plaintiff's president and CEO, Wurster, his familiarity with and expertise in the travel market for New York metro area and Plaintiff's efforts in that market, it is reasonable to believe that the misdirection of Plaintiff's customers to New Jersey Limo's www.nylimostars.com website is sole the cause for Plaintiff's weaker performance in the New York metro area. (Doc. 25, Exh 1, ¶¶ 24, 27)

44. As Plaintiff's sales fell in the New York metro area during the Website Period, Plaintiff made the strategic decision to redirect resources away from other markets and focus Plaintiff's efforts on the New York metro area. This redirection of resources from Plaintiff's business nationally likely played a significant role in the 45 percent decrease in its national performance outside the New York metro area. In other words, the impact of www.nylimostars.com is probably even greater than reflected in the difference between the

58 percent decline in the New York metro area (which would have been larger but for the redirection of resources) as compared to the 45 percent decline nationally (which would have been smaller but for the redirection of resources). (Doc. 25, Exh 1, ¶ 28)

45. Plaintiff's President and CEO's hearing testimony established that the ground transportation industry in New York metro area was not impacted nearly as significantly by the recession during the Website Period as reflected by Plaintiff's sales there. (Tr. at 34-38, and Hrg Exh 8) Wurster indicated that from January of 2008 through December of 2010, the average price for an individual "medallion," a license to operate a ground transportation vehicle, like a taxi, in New York City, increased from $429,000 to $624,000, with increases almost every individual month during that period.[12] (Tr. at 39-42; Hrg Exh 9) Prices for a corporate medallion alone increased from $597,000 to $850,000 over approximately the same period. (*Id.*) These increases reflect an increase in the value of only the medallion alone for ground transportation businesses in the New York metro area during the Website Period and diminish the impact the recession had on Plaintiff's large decline in sales in the New York metro area during the Website Period. (*Id.* at 42)

46. Plaintiff's historical average profit margin has been 38% of revenues. (Tr. at 35) Applying this profit margin to the lost sales attributable to www.nylimostars.com results in a "very, very conservative estimate," tr. at 38, of Plaintiff's damages at $16,916.37 (*i.e.*, $44,516.76 x 38%). (Doc. 25, Exh 1 at ¶ 29; Tr. at 34; Hrg Exh 8) The mathematical computation underlying this very conservative and reasonable damage calculation is summarized in default hearing Exhibit 8. (Tr. at 37)

47. This conservative calculation understates Plaintiff's actual damages, because it does not take into account the following considerations and elements of additional damages which are extremely difficult, if not impossible, to quantify:

a. The extra promotional efforts Plaintiff expended in the New York metro

---

[12] "THE COURT: So you're telling me that in February of 2008, if I wanted to buy a taxi license [in New York City], have a one-man show, it would be $429,000? THE WITNESS: That is correct." (Tr. at 42)

area but not nationally, partially masking the contrast between the New York sales decline and the national decline during the Website Period;

       b. The long-term effects of the infringement; these calculations take a mere snapshot of the sales during the Website Period, but a significant portion of Plaintiff's customers are repeat customers, meaning that it was deprived during the Website Period of new customers who might otherwise have become repeat customers generating revenue far into the future (for example, Plaintiff's new corporate accounts for the New York metro area declined by 67% during the Website Period; Plaintiff's corporate account growth before 2009 was an average of 304 new accounts per year but fewer than 100 new accounts were added in 2009.

       c. The long-term, post-Website Period effect that the offending website had and is continuing to have on www.limostars.com's search engine optimization and search engine rankings; or

       d. The unknown effect that www.nylimostars.com had on Plaintiff's ability to generate and maintain relationships with affiliated suppliers and sales affiliates, to attract new investors, or to enter into strategic alliances with other companies, all of which have been targets of Plaintiff's efforts, with less-than-expected degrees of success.

(Doc. 25, Exh 1, ¶ 30; Tr. at 35, ll 19-37, l 15)

       48. Plaintiff incurred, and is legally obligated to pay, attorneys' fees in the amount of $36,973.70 ($26,133.70 + $10,840.00). (Docs. 27-2 at 1-2; 27-4 at 1-5; 45-3 at 1-2)

       49. Plaintiff's Post-hearing Memorandum acknowledges its damages calculation at the hearing, summarized in the hearing's Exhibit 8, is slightly erroneous because it was based on the fact that the offending website was online for a 19-month period of time. (Doc. 43 at 9) Plaintiff admits it was unaware when it prepared its damages calculation that the offending website was registered for the first two months to Haroon Chaudry. (*Id.*; Hrg Exh 7)

       50. The Court accepts Plaintiff's recommendation to reduce Plaintiff's damages by 2/19 to arrive at an accurate damages calculation, *i.e.* the previously calculated actual damages of $16,916.37, multiplied by 17/19, would be $15,135.69. (Doc. 43 at 9) Trebling $15,135.69 ($15,135.69 x 3 = $45,407.07), Plaintiff's total damage award (excluding costs and attorneys' fees) is $45,407.07.

**VI. Conclusions of Law**

51. This District Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because federal district courts have original jurisdiction over all civil actions arising under the laws of the United States. This action arises under such laws as each count of Plaintiff's Complaint, doc. 10, asserts a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1111 *et seq.*

52. Defendant New Jersey Limo was properly served in compliance with Rules 4(h)(1)(A) and 4(e)(1) as Plaintiff served New Jersey Limo in accordance with state law for serving a summons and complaint in New Jersey pursuant to N.J.S.A. 2A:15-30.1, where New Jersey Limo is incorporated and where it lists its registered agent's address.[13] *B & B Realty Associates, LLC*, 2008 WL 4681981 at * 5 ("We are satisfied that there was good service on" corporate defendant when service on statutory agent could not be effectuated, counsel served the New Jersey Department of Treasury on behalf of corporation pursuant to N.J.S.A. 2A:15-30.1).

53. This District Court's exercise of personal jurisdiction over New Jersey Limo is proper because (1) New Jersey Limo consented to personal jurisdiction in this District for disposition of disputes involving domain names registered through the GoDaddy.com, (2) New Jersey Limo misdirected customers within this District, and (3) New Jersey Limo knowingly caused injury to Plaintiff within this District. *Productive People*, 2009 WL 1749751 at * 2 ("A contract's forum selection clause alone is sufficient to confer personal jurisdiction and venue[.]") (citation omitted). New Jersey Limo purposefully availed itself of the privilege of conducting activities in this District. Plaintiff's claims arise out of

---

[13] Federal Rule of Civil Procedure 4 contains detailed provisions on the manner in which service should occur, and a plaintiff may utilize the service of process rules that apply in the state in which the federal district court is located or, if service is effected in another state, the rules of that state. Fed.R.Civ.P. 4(e)(1). Therefore, service of process will be upheld if it conforms to either federal or applicable state service of process rules. *Robinson v. Heritage Elementary School*, 2009 WL 1578313, * 2-3 (D.Ariz., June 3, 2009).

and relate to New Jersey Limo's forum-related activities, and the exercise of personal jurisdiction in this District is reasonable in light of New Jersey Limo's consent to personal jurisdiction in this District. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Any claim that the forum selection clause in the GoDaddy Agreement does not apply to New Jersey Limo in this action is meritless. The same argument involving the same language in a different GoDaddy Agreement was rejected by Judge Snow in *Productive People*:

> The fact that the agreement was entered into between GoDaddy.com and the . . . Defendants means only that those are the parties bound by the agreement. Being bound parties, the . . . Defendants cannot escape the forum selection clause. Nor does the fact that Plaintiff is not a signatory to the contract render the forum selection clause unenforceable in these circumstances. Non-parties may enforce forum selection clauses. See *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988) (explaining that both "parties and non-parties" may "benefit from and be subject to forum selection clauses").

*Productive People*, 2009 WL 1749751 at * 3. There were no facts described in *Productive People* that distinguish it in any significant way from this case. (see also, doc. 43 at 1-3)

54. Venue is proper in the District Court of Arizona because New Jersey Limo voluntarily consented to venue in Arizona.[14] *Productive People, LLC*, 2009 WL 1749751 at * 2 ("A contract's forum selection clause alone is sufficient to confer personal jurisdiction and venue[.]") (citation omitted); *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (forum selection clause in contract, providing that venue of action brought under contract would be deemed to be in Virginia, was enforceable).

55. Plaintiff expressly consented in writing to magistrate-judge jurisdiction, doc. 13, pursuant to 28 U.S.C. § 636(c) and, therefore, this Magistrate Judge has jurisdiction

---

[14] New Jersey Limo, through its CEO, contractually agreed to venue in Arizona by consenting to Go Daddy's Universal Terms of Service for Go Daddy Software and Services: "For the adjudication of disputes concerning the use of any domain name registered with Go Daddy, You agree to submit to . . . venue in the U.S. District Court for the District of Arizona located in Phoenix, Arizona . . . ." (Doc. 25, Exh 6 at 4, ¶ 14; see also, Exh 2 at 4, ¶ 8; Exh 6 at 35, ¶ 20; Exh 2 at 4, ¶ 8)

to issue this Report and Recommendation.

56. This Magistrate Judge has authority to recommend a non-final and independent determination of fact and law that default judgment be entered against Defendants without the consent of the Defendants. *Wang v. Masaitis*, 416 F.3d. 992 , 999 (9th Cir. 2005) (holding that the magistrate judge was well within her authority to issue an report and recommendation on Wang's habeas petition without Wang's consent for *de novo* review by district judge); 28 U.S.C. § 636(b)(1)(A); LRCiv. 72.2(a)(1).

57. The federally registered LIMOSTARS trademark (Reg. No. 3,020,888) owned by Plaintiff is a valid and distinctive trademark entitled to strong protection. *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009). Its registration constitutes *prima facie* evidence of Plaintiff's exclusive right to use the mark on the goods and services specified in the registration. 15 U.S.C. § 1115(a); *Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

58. New Jersey Limo engaged in unlawful trademark infringement in violation of 15 U.S.C. §§ 1114(1)(a) and 1125(a) because its use of the domain name www.nylimostars.com is confusingly similar to the LIMOSTARS trademark and likely causes confusion. *Lahoti*, 586 F.3d at 1196. The following factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) support the finding of a likelihood of confusion: (1) the strength of the mark, (2) the proximity or relatedness of the goods, (3) the similarity of the marks, (4) the marketing channel used, and (5) New Jersey Limo's intent in selecting the mark.

59. The three factors considered the most important in the internet domain name context (*i.e.*, similarity of the marks, relatedness of the goods and services, and the parties' simultaneous use of the Web as a marketing channel) strongly favor a finding of a likelihood of confusion in this case. *Perfumebay.com, Inc. v. Ebay Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007).

60. Plaintiff is entitled to injunctive relief because when, as here, the infringing use is for a similar service, a broad injunction is especially appropriate. *GoTo.com, Inc. v.*

*Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000).

61. Without injunctive relief, Plaintiff will likely continue to suffer irreparable harm from New Jersey Limo's offending www.nylimostars.com website.[15] *Brookfield Comm., Inc. v. West Coast Entertainment Corp*., 174 F.3d 1036, 1066 (9th Cir. 1999). Money damages are inadequate because of the difficulty in quantifying several categories of damages, and Faltaww's recent incorporation of NY Limo Stars LLC and registration of additional "nylimostars" infringing websites suggest an undaunted intent to continue to engage in the infringement of Plaintiff's trademark.

62. The balance of harms in issuing an injunction favors Plaintiff because New Jersey Limo and Faltaww have no interest in the LIMOSTARS trademark but could create other websites through which it could market and sell its services. *Perfumebay*, 506 F.3d at 1177.

63. The public interest compels the issuance of an injunction to protect consumers from being misled. *Intel Corp. v. Terabyte Int'l, Inc*., 6 F.3d 614, 618 (9th Cir. 1993).

64. The Tenth, Fifth and Seventh Circuits[16] have held that an injunction may apply to "'[n]onparties who reside outside the territorial jurisdiction of a district court . . . for purposes of contempt proceedings if, with actual notice of the court's order, they actively aid

---

[15] Plaintiff expresses the concern that the ongoing threat of irreparable harm is further demonstrated by the current status of the www.nylimstars.com website and registration. (Doc. 43 at 6) New Jersey Limo's web page has been replaced with a cryptic web page written mostly in what appears to be Arabic. (*Id.*; Hrg Exh 18) Plaintiff is concerned that Faltawws is working with current operators and may be taking a wait-and-see approach, waiting to see how the Court rules and how far Plaintiff is willing to pursue enforcement before replacing the website with another English version advertising competing limousine services again. (Doc. 43 at 6)

[16] Plaintiff indicates that the although "the Ninth Circuit does not appear to have addressed this issue, the weight of authority permits the exercise of jurisdiction over non-resident nonparties acting in concert with a party to violate a court's injunction." (Doc. 43 at 8)

and abet a party in violating [an injunction].'" *ClearOne Communications, Inc. v. Bowers*, ___ F.3d ___, 2011 WL 2654655, * 12 (10th Cir., July 8, 2011) (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985) and citing *Sec. and Exch. Comm'n v. Homa*, 514 F.3d 661, 673–75 (7th Cir. 2008)). The "injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its orders regardless of where that defiance occurs." *Homa*, 514 F.3d at 674. Because "an injunction binds . . . nonparties who act with the named party," *id.*, exercise of jurisdiction over co-actors "without any other contact with the forum . . . is necessary to proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Id.* at 675; *Red 1 Investments, Inc. v. Amphion International Ltd.*, 2007 WL 3348594, * 2 (E.D.Wash., Nov. 9, 2007) ("[A] nonparty who is alleged to have acted in concert to aid and abet a violation of an injunction can be held in contempt only upon the 'predicate' finding that the enjoined party has violated the order.") (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243 (2d Cir. 2002) (citations omitted)).

65. Plaintiff is entitled to monetary damages pursuant to 15 U.S.C. § 1117(a). When trademark infringement is deliberate and willful, as here, a remedy no greater than an injunction would slight the public. *Lindy Pen Co., Inc. v. BIC Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993).

66. Plaintiff has established a *prima facie* showing of lost profits based on a reasonable sales forecast. *Id.* at 1407. Plaintiff's president and CEO, Wurster, qualifies as an expert witness under Rule 702, Fed.R.Evid as he has been involved in the limousine business since 1984, tr. at 13-14, on the subjects of Plaintiff's lost profits, Plaintiff's business' sales history, and the limousine transportation business in the New York metro area. *Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 137, 1997 WL 175062, * 3 (9th Cir. 1997); *Bohannon v. Korea Wonyang Fisheries Co., Ltd.*, 877 F.2d 64, 1988 WL 67118, * 4 (9th Cir. 1988). At the hearing, Wurster's damage calculation of, at least, $16,916.37 is a conservative estimate based on reasonable inferences, projections drawn from Plaintiff's historical sales figures and the limousine transportation business in the New York metro area.

67. "General allegations of damages in a prayer for relief are sufficient to support a default judgment under Rule 54(c) as long as the defendant is given reasonable notice thereby of the potential amount at stake." *Anunciation*, 1996 WL 534049 at * 3. Plaintiff's Complaint requests compensatory damages "in an amount to be determined at trial." (Doc. 10 at 10) Plaintiff also seeks lost profits, *id*., because New Jersey Limo has diverted Plaintiff's customers, *id*. at ¶ 19, and the loss of even a single customer can equate to more than a million dollars in lost revenue. *Id*. New Jersey Limo has been provided reasonable and fair notice of the amount of money and other requested relief at stake, and Plaintiff's relatively modest damages calculation does not exceed the amount requested in the Complaint.

68. Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1117(a) because Plaintiff's very conservative calculation of lost profits does not fully capture Plaintiff's actual damages. 87 C.J.S. Trademark § 377. The Plaintiff's inability to precisely quantify New Jersey Limo's unjust enrichment and the other damages evidence are exclusively within New Jersey Limo's own records. Plaintiff is unable to prove New Jersey Limo's unlawful profits from its trademark infringement because New Jersey Limo failed to participate in this action and Plaintiff is unable to conduct discovery of New Jersey Limo's books and records.

69. Plaintiff's Post-hearing Memorandum acknowledges its damages calculation at the hearing, summarized in the hearing's Exhibit 8, is slightly erroneous because it was based on the fact that the offending website was online for a 19-month period of time. (Doc. 43 at 9) Plaintiff admits it was unaware when it prepared its damages calculation that the offending website was registered for the first two months to Haroon Chaudry. (*Id.*; Hrg Exh 7)

70. The Court accepts Plaintiff's admission and recommendation to reduce Plaintiff's damages by 2/19 to arrive at an accurate damages calculation, *i.e.* the previously calculated actual damages of $16,916.37, multiplied by 17/19, would be $15,135.69. (Doc. 43 at 9) Trebling $15,135.69 ($15,135.69 x 3 = $45,407.07), Plaintiff's total damage award

(excluding costs and attorneys' fees) is $45,407.07.

71. "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." *Rio Properties, Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (citing 15 U.S.C. § 1117(a) (2001)). See also; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Properties*, 284 F.3d at 1023 (citing *Playboy Enterp., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982)). In *Rio Properties*, the Ninth Circuit affirmed the district court's award of plaintiff's reasonable attorneys' fees and costs after determining defendant acted willfully and in bad faith as part of a default judgment.

72. Because the Court accepts as true Plaintiff's well-pled allegations, including the willfulness of New Jersey Limo's trademark infringement and New Jersey Limo's willful continued use of Plaintiff's LIMOSTARS trademark, this is an "exceptional" case and attorneys' fees may be properly awarded to Plaintiff pursuant to 15 U.S.C. § 1117(a).

73. Plaintiff is entitled to an award of attorneys' fees in the amount of $36,973.70 ($26,133.70 + $10,840.00) and an award of non-taxable costs in the amount of $2,564.39 ($840.58 + $1,723.81) (including $1395.92 ($386.02 + $1,000.90) in travel expenses; $454.56 in electronic research costs; $204.00 for the cost of serving GoDaddy.com, Inc. and Domains By Proxy, Inc. with subpoenas; $518.91 for the cost of (1) reimbursing GoDaddy and Domains By Proxy for copying and transmitting documents produced in response to the subpoenas, (2) obtaining records from the State of New Jersey concerning New Jersey Limo and NY Limo Stars LLC, and (3) a subscription to Domain Tools to investigate the history of registration and IP address association of nylimostars.com, nylimostars.us., nylimostars.co, and nylimostars.info), all of which are authorized by 15 U.S.C. § 1117(a). (Docs. 27 at 1-7, 45 at 1-5)

74. "The burden is on the moving party to show that the requested fees are reasonable." *Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service*, 553 F.Supp.2d 201, 208 (E.D.N.Y. 2008) (trademark infringement action); *Ball v. Colco-Tylerton, L.P.*, 2002 WL 32985907, * 2 (C.D.Cal., Oct. 23, 2002) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). "[I]n determining what attorney's fee is reasonable in a particular case, the court arrives at the 'lodestar amount,' that is, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Primerica Life Ins. Co. v. Pallares*, 2009 WL 4927908, * 3 (W.D.Wash., Dec. 14, 2009) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). "There is a strong presumption that the lodestar represents the reasonable fee." *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). "The Ninth Circuit also requires consideration of the factors announced in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) in reviewing a claim for attorneys fees." *Id.* (citing *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006)).

75. Plaintiff's attorney Mark L. Brown's hourly rates of $391.00 per hour until October 2010 and $400.00 per hour after October 2010 are reasonable, considering his experience, his expertise in a specialized, complex area of federal law (trademark infringement), and several other factors based on his verified information and background. (Doc. 27-4 at 1-5; 45-3 at 1-2).[17]

---

[17] For guidance, the Court has considered the twelve *Kerr* factors in awarding fees to determine the reasonableness of Plaintiff's requested fees in this action: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

76. Plaintiff's attorney Mark L. Brown's billable hours of 92.2 hours (65.8 + 27.1 hours) incurred in prosecuting this case are reasonable for the legal work performed for Plaintiff. (Doc. 27-4 at 1-5; 45-2 at 1-4)

77. "Punitive damages are not available under the Lanham Act." *Binder v. Disability Group, Inc.*, 2011 WL 284469, * (C.D.Cal., Jan. 25, 2011) (citing McCarthy on Trademarks and Unfair Competition, 30:97 ("[C]ourts have held that punitive damages are not recoverable in cases brought under the federal Lanham Act."). "While Lanham Act § 35 does not authorize an additional award of punitive damages for willful infringement of a registered trademark or for a violation of § 43(a), punitive damages are still available for accompanying state, non-federal causes of action for trademark infringement." *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 918-19 (7th Cir. 2007) (quoting J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 30:97 (4th ed. 2005) (internal quotation marks omitted). also see, *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996).

78. The Court declines to award punitive damages against New Jersey Limo because the issue was not sufficiently developed by Plaintiff under state law.

79. "[N]on-taxable costs are not recoverable under the Lanham Act." *Roth v. Naturally Vitamin Supplements, Inc.*, 2007 WL 2020114, * 7 (D.Ariz., July 6, 2007) (citing *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 884-85 (9th Cir. 2005)). Ninth Circuit authority exists, however, that certain non-taxable expenses, such as, plaintiff's attorney's travel expenses, may be recovered as part of a successful plaintiff's attorneys' fees. *Safeworks, LLC v. Teupen America, LLC*, 2010 WL 3033711 (W.D.Wash., July 29, 2010) (citing *Grove v. Wells Fargo Financial California, Inc.* 606 F.3d 577, 579-582 (9th Cir. 2010).

80. The default judgment requested by Plaintiff is appropriate because of the likelihood of prejudice to Plaintiff if the request were denied, the merits of Plaintiff's substantive claims and the sufficiency of the Complaint, the relatively small amount of money requested, the unlikelihood of a genuine dispute concerning material facts, the

absence of evidence of excusable neglect on the part of New Jersey Limo and its CEO, and the impracticality or impossibility of a decision on the merits in New Jersey Limo's absence. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

Accordingly,

**IT IS RECOMMENDED** as follows:

1. Plaintiff LimoStars, Inc.'s Motion and Application for Entry of Default Judgment, docs. 18, 23, against Defendant New Jersey Car and Limo, Inc. be **GRANTED**;

2. Plaintiff's Application for Attorneys' Fees and Non-Taxable Costs, doc. 27, be **GRANTED**;

3. Defendant New Jersey Car and Limo, Inc. be permanently enjoined from (1) operating www.nylimostars.com; (2) infringing or unfairly competing against Plaintiff by utilizing any derivation of the federally registered trademark "LIMOSTARS" in any promotion, advertisement, or any other commercial activity, including, but without limitation, the use of www.nylimostars.com; www.nylimostars.us., www.nylimostars.co, and www.nylimostars.info; and (3) refusing to transfer to Plaintiff LimoStars, Inc. the use of www.nylimostars.com.;

4. This Judgment be binding on Defendant New Jersey Car and Limo, Inc., their officers, agents, servants, employees, and attorneys, and any person acting in concert or participating with anyone having actual notice of this Judgment; and

3. Judgment be entered in favor of Plaintiff LimoStars, Inc. and against Defendant New Jersey Car and Limo, Inc., in the amount of $82,380.77 ($45,407.07 + $36,973.70 for attorney's fees) plus Plaintiff's taxable costs and non-taxable expenses allowed by Rule 54(d)(1), LRCiv 54.1, and 28 U.S.C. § 1920. See, *Grove*, 606 F.3d at 579-582; *In re Apollo Group, Inc. Securities Litigation*, 2009 WL 2169178 (D.Ariz., July 17, 2009). The Judgment shall earn interest at the annual federal rate from the date of entry of this Judgment until paid in full.

**IT IS FURTHER ORDERED** that if this Report and Recommendation is approved by Senior United States District Judge Stephen M. McNamee or if he otherwise

directs, the Clerk is kindly directed to enter Judgment consistent with this Order pursuant to Rule 58(a), (b)(2), Fed.R.Civ.P.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended on December 1, 2009[18]; Rules 72 and 6, Federal Rules of Civil Procedure, as amended on December 1, 2009. Thereafter, the parties have 14 days within which to file a response to the objections. Rule 72(b)(2), Fed.R.Civ.P. Failure to file timely objections to this Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of this Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

Dated this 8th day of August, 2011.

Lawrence O. Anderson
United States Magistrate Judge

---

[18] See, Statutory Time-Periods Technical Amendments Act of 2009. H.R. 1626.